**KNEUPPER & COVEY, PC**
A. Lorraine Weekes, Esq. (CA SBN 332369)
17011 Beach Blvd., Suite 900
lorraine@kneuppercovey.com
Tel: 215-999-9767

*Attorney for Plaintiff*
*Manuel Gonzalez*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL GONZALEZ,<br><br>  Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION,<br><br>  Defendant. | Case No. 2:23-cv-00722<br><br>**VERIFIED COMPLAINT FOR:**<br><br>(1) Violation of the Electronic Fund Transfer Act<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Manuel Gonzalez, by and through the undersigned counsel, hereby files this Complaint against Defendant Bank of America, National Association ("Bank of America") and alleges as follows:

## JURISDICTION

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Electronic Fund Transfer Act.

2. This Court has personal jurisdiction over Bank of America because it has sufficient minimum contacts with California, has purposely availed itself of the benefits and protection of California law, and conducts a substantial amount of business in California, including in this District, such that this Court's exercise of personal jurisdiction is reasonable and accords with due process. Moreover, the actions of Bank of America that have given rise to this litigation occurred within California.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## THE PARTIES

4. Plaintiff Manuel Gonzalez is a citizen of the State of California and resides in Carson, California.

5. Defendant Bank of America, National Association is a Delaware corporation whose principal address is 100 North Tyron Street, Charlotte, North Carolina 28255. Bank of America is registered to do business in California as a foreign corporation and does a substantial amount of business in the State of California.

## FACTUAL ALLEGATIONS

6. Mr. Gonzalez is a California consumer who had a checking account with Bank of America at all times relevant to this action.

7. Mr. Gonzalez was the sole accountholder for this checking account, and no one else had authorization to withdraw or otherwise access the funds in this account or use the debit card associated with this account.

8. Mr. Gonzalez is permanently disabled due to a seizure disorder and a prior head injury. He suffers from short-term and long-term memory loss as a result of his health problems.

9. On or around November 22, 2022, between the hours of 3:00 PM and 4:00 PM, Mr. Gonzalez had a seizure that rendered him incapacitated while he was at the Harbor UCLA Medical Center, which is located at 1401 West Lomita Boulevard, Harbor City, California, 90710.

10. During his period of incapacitation, Mr. Gonzalez's wallet was stolen or otherwise lost.

11. At the time that Mr. Gonzalez's wallet was stolen or otherwise lost, it contained a debit card associated with his Bank of America checking account. Mr. Gonzalez's wallet also contained a piece of paper that had the PIN for his debit card written on it. Mr. Gonzalez needed to have this written reminder of his PIN because, as a result of his short-term and long-term memory loss, he frequently had difficulty remembering his PIN.

12. On or around November 26, 2022, Mr. Gonzalez accessed his Bank of America checking account online to make a deposit and realized that funds he'd previously maintained in the account had been depleted. Mr. Gonzalez received a notification the following day that the available balance on his Bank of America checking account was low.

13. Shortly thereafter, Mr. Gonzalez reviewed his online account statement and contacted Bank of America to dispute several unauthorized electronic fund transfers. Mr. Gonzalez provided Bank of America all the relevant information regarding the dispute including his explanation of how these unauthorized electronic fund transfers had occurred. Specifically, Mr. Gonzalez both indicated that he believed the transactions at issue were unauthorized and explained the basis for that belief.

14. A summary of the four unauthorized electronic fund transfers, including the date, location, and amount of the transfers is as follows:

| Date | Amount | Location |
|---|---|---|
| November 22, 2022 | $1,000.00 | Bank of America ATM Del Amo Center Torrance, California |
| November 23, 2022 | $1,000.00 | Bank of America ATM Lakewood Country Club Lakewood, California |
| November 25, 2022 | $1,000.00 | Bank of America ATM Lakewood Country Club Lakewood, California |
| November 28, 2022 | $700.00 | Bank of America ATM Del Amo Center Torrance, California |

The description for the ATM withdrawal that was posted to Mr. Gonzalez's account on November 28, 2022, indicates that it actually occurred on November 26, 2022.

15. The unauthorized electronic fund transfers only ceased once the funds in Mr. Gonzalez's checking account had been depleted.

16. Mr. Gonzalez was informed by Bank of America that Bank of America would investigate the unauthorized electronic fund transfers to determine whether he would be held liable for these amounts.

17. Mr. Gonzalez's account was never provisionally credited for the amount of the disputed electronic fund transfers.

18. On or around December 6, 2022, Mr. Gonzalez received a letter from Bank of America that contained the conclusion of its "investigation." The letter informed Mr. Gonzalez that it would be "unable to approve [his] recent claim," and that its "research included the information [he] provided with [his] claim, [his] account history, the monthly statements [Bank of America] sent [him] and if available, information from the merchant, such as a signed receipt or contract." According to the letter, the decision not to approve the claim was made because "[t]he charge was authorized by [Mr. Gonzalez] or made by someone who [had] permission to use the card or account."

19. Mr. Gonzalez promptly contacted Bank of America and requested that it reinvestigate the claim given that the initial claim had been closed before he had been able to provide Bank of America all the relevant documentation.

20. Mr. Gonzalez subsequently provided Bank of America a written description of how he lost possession of his debit card and the circumstances under which the electronic fund transfers were likely made, evidence of his disability, and a police report related to the loss of his debit card and wallet.

21. Bank of America stated that it would reopen the claim, but Mr. Gonzalez has yet to receive the outcome of this supposed reinvestigation as of the date of this filing.

22. Despite Mr. Gonzalez's repeated assertions that the electronic fund transfers were unauthorized, Bank of America has refused to take any further action to assist him.

23. Mr. Gonzalez has yet to receive reimbursement for any of the four unauthorized electronic fund transfers that were made to his account, and Bank of America has held Mr. Gonzalez liable for $3,700.00 in unauthorized electronic fund transfers in violation of the Electronic Fund Transfer Act.

## FIRST CAUSE OF ACTION AGAINST BANK OF AMERICA
## VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT
## 15 U.S.C. § 1693 *et seq.*

24. Under EFTA, Regulation E, and Regulation E's Official Interpretations, Bank of America bears the responsibility for unauthorized electronic fund transfers like the ones at issue here.

25. With limited exceptions not relevant here, EFTA broadly defines "unauthorized electric fund transfers" as "electronic fund transfer[s] from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." 15 U.S.C. § 1693a(12).

26. EFTA caps consumer liability for such unauthorized electronic fund transfers at $50.00. See 15 U.S.C. § 1693g(a).

27. Importantly, "the burden of proof is upon the financial institution to show that the electronic fund transfer[s] [were] authorized or, if the electronic fund transfer[s] [were] unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability . . . have been met." 15 U.S.C. 1693g(b).

28. The obligation to investigate such unauthorized electronic fund transfers is triggered under EFTA's error resolution procedures when the consumer provides minimal information to the financial institution. See 15 U.S.C. § 1693f(a). "Error" is defined broadly under this provision and includes "unauthorized electronic fund transfer[s]," such as the ones at issue here. See 15 U.S.C. § 1693f(f).

29. Under the error resolution procedures, once the financial institution "receives oral or written notice in which the consumer — (1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer; (2) indicates the consumer's belief that the documentation . . . contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief . . . that an error has occurred, the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days." 15 U.S.C. § 1693f(a); see also 12 C.FR. § 205.11.

30. In the event that the investigation determines that an error has occurred, the financial institution "shall promptly . . . correct the error." 15 U.S.C. § 1693f(b). However, in the event that the investigation determines that an error has not occurred, the financial institution must provide the consumer an explanation and inform the consumer of certain rights. Specifically, "[i]f the financial institution determines after its investigation . . . that an error did not occur, it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur." 15 U.S.C. § 1693f(d).

31. In lieu of the above error resolution procedure, a financial institution may "within ten business days after receiving . . . notice provisionally recredit the consumer's account for the amount alleged to be in error . . . pending the conclusion of its investigation and its determination of whether an error occurred." 15 U.S.C. § 1693f(c).

32. If it is ultimately found that "(1) the financial institution did not provisionally recredit a consumer's account within the ten-day period specified in [15 U.S.C. § 1693f(c)], and the financial institution (A) did not make a good faith investigation of the alleged error, or (B) did not have a reasonable basis for believing that the consumer's account was not in error; or (2) the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not have reasonably been drawn from the evidence available to the financial institution at the time of its investigation, then the consumer shall be entitled to treble damages." 15 U.S.C. § 1693f(e).

33. Bank of America has acted unlawfully in attempting to hold Mr. Gonzalez liable for $3,700.00 in unauthorized electronic fund transfers that were completed by an unknown third party.

34. The unknown third party had no actual authority to initiate the electronic fund transfers from Mr. Gonzalez's Bank of America account, and Mr. Gonzalez did not authorize anyone to use his debit card or checking account during the period in which the unauthorized electronic fund transfers were made. Additionally, Mr. Gonzalez received no benefit from the electronic fund transfers at issue, and this is evidenced by the fact that he now faces substantial financial insecurity as a result of the theft of $3,700.00 from him.

35. Bank of America cannot meet the burden of showing that Mr. Gonzalez authorized the electronic fund transfers or that the conditions of liability have been met insofar as his debit card was stolen from him immediately prior to the electronic fund transfers at issue along with his wallet, which contained the PIN for this card. Mr. Gonzalez provided this information to Bank of America when he reported the unauthorized electronic fund transfers and repeated this information when Bank of America denied his claim for reimbursement. Bank of America ignored numerous factors that suggested that the

electronic fund transfers were not authorized by Mr. Gonzalez. First, Mr. Gonzalez had a seizure that left him incapacitated immediately before the unauthorized electronic fund transfers began. Second, Mr. Gonzalez had his wallet and Bank of America checking card stolen or otherwise lost while he was incapacitated by the seizure and filed a police report regarding the same, which was later provided to Bank of America. Third, the use of the debit card to make repeated, large cash withdrawals from ATMs was entirely inconsistent with Mr. Gonzalez's historical use of the card. Fourth, Mr. Gonzalez promptly reported the unauthorized transfers to Bank of America after discovering they had been made.

36. Bank of America also ignored alternate explanations of certain factors to justify the predetermined conclusion of its investigation. Specifically, Bank of America justified its denial of Mr. Gonzalez's claim solely because it found the charge was authorized by him or made by someone who had permission to use the card. Bank of America offered no explanation as to how it made this determination, but, to the extent that this determination was based on the fact that Mr. Gonzalez's PIN was used to make the ATM withdrawals, it fails to account for the fact that Mr. Gonzalez's stolen or lost wallet contained both his Bank of America debit card and a piece of paper with his PIN on it, the latter of which was necessary because of Mr. Gonzalez's memory problems.

37. Finally, on information and belief, Bank of America failed to consider evidence within its possession that would have shown that Mr. Gonzalez was not the individual who had made the disputed electronic fund transfers, specifically, surveillance footage from the Bank of America ATMs at which the withdrawals were made.

38. As such, Bank of America acted in violation of EFTA and Regulation E by failing to correct the "error" (the unauthorized transfers) by crediting Mr. Gonzalez's account for the amount of the unauthorized electronic fund transfers.

39. Bank of America has acted unlawfully in failing to conduct a reasonable and good faith investigation into the unauthorized electronic fund transfers as required by EFTA and Regulation E.

40. A reasonable investigation would have concluded that Mr. Gonzalez did not authorize any of the disputed electronic fund transfers, promptly reported the unauthorized transfers by phone, and had no history of irresponsibly using his account or making false or unverifiable reports of fraud. That Bank of America's investigation did not reach the conclusion that the electronic fund transfers were unauthorized shows that it was not a bona fide reasonable investigation.

41. As such, Bank of America acted in violation of EFTA and Regulation E by failing to conduct a bona fide reasonable investigation into the unauthorized electronic fund transfers.

42. The acts and omissions of Bank of America that are set forth above constitute violations of EFTA and Regulation E.

43. As a direct and proximate result of the unlawful conduct of Bank of America, Mr. Gonzalez is entitled to the actual damages that he incurred, including, but not limited to, past and future monetary loss, emotional distress, and mental anguish. Specifically, Mr. Gonzalez seeks actual damages of $3,700.00 for the amounts that he was unlawfully held liable for in violation of EFTA and Regulation E. Mr. Gonzalez also seeks emotional distress damages in an amount to be determined.

44. As a direct and proximate result of the unlawful conduct of Bank of America, Mr. Gonzalez is entitled to an award of statutory damages, as well as attorneys' fees and costs. Specifically, Mr. Gonzalez seeks statutory damages in the amount of $1,000.00.

45. Finally, as a direct and proximate cause of the unlawful conduct of Bank of America, Mr. Gonzalez is entitled to an award of treble damages. Bank of America failed to provisionally recredit Mr. Gonzalez's account, did not make a bona fide good faith investigation of the unauthorized electronic fund transfers, and did not have a good faith basis for believing that his account was not in error. Additionally, Bank of America knowingly and willfully concluded that Mr. Gonzalez's account was not in error despite the fact that such a conclusion could not reasonably have been drawn from the evidence available to it at the time of the investigation into the unauthorized electronic fund transfers.

# PRAYER FOR RELIEF

46. WHEREFORE, Mr. Gonzalez seeks:

    A. Actual damages in an amount to be proven at trial;

    B. Trebling of actual damages under EFTA;

    C. Statutory damages of $1,000.00 for Bank of America's violations of EFTA, <u>see</u> 15 U.S.C. § 1693m(a)(2)(A);

    D. Reasonable attorney's fees under EFTA;

    E. Costs and expenses associated with this action; and

    F. Such other relief as this Court may deem just and proper.

# JURY TRIAL DEMANDED

47. Mr. Gonzalez demands a jury trial of the facts alleged above on all counts and on all issues so triable.

DATED: January 31, 2023

Respectfully submitted,

*/s/ A. Lorraine Weekes*

A. Lorraine Weekes, Esq.
CA SBN 332369
Lorraine@kneuppercovey.com

KNEUPPER & COVEY, PC
17011 Beach Blvd., Suite 900
Huntington Beach, CA 92647
Tel: 215-999-9767
Fax: 855-596-3707

*Attorney for Plaintiff Manuel Gonzalez*

# VERIFICATION

I, Manuel Gonzalez, am the plaintiff in this action. I declare under penalty of perjury that the foregoing factual allegations are true and correct, except to the extent that they are made "on information and belief," and, as to those matters, I declare under penalty of perjury under the laws of the United States of America that I believe them to be true.

Dated this __19__ day of January, 2023.

_____
Manuel Gonzalez